**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

SHEENA COLLAR
        Plaintiff,

    v.                                 Case No. 04-C-0620

DALE COLLAR and CINDY COLLAR
        Defendants.

---

### DECISION AND ORDER

Plaintiff Sheena Collar, a citizen of Georgia, brings this negligence action against defendant Dale Collar, a citizen of Florida, and defendant Cindy Collar, a citizen of Tennessee, alleging that in 1989 she suffered injuries after bathing in defendants' hot tub in Elkhart Lake, Wisconsin. I have jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Before me now are defendants' motion for summary judgment and their requests to disregard certain of plaintiff's evidence and to sanction plaintiff's attorney.

### I. BACKGROUND

In 1989, when plaintiff was four, she and members of her family bathed in defendants' hot tub in Elkhart Lake, Wisconsin. Some of the bathers including defendant Dale Collar, plaintiff's mother Pamela, her father Steve, and her sister Mandy developed a bacterial infection, pseudomonas aeruginosa. Other bathers did not become infected. In 1992, Steve, Pamela and Mandy sued defendants and their insurer alleging that defendants failed to properly clean the hot tub. The case was ultimately settled. In 1993,

when plaintiff was eight, her parents filed a negligence suit on her behalf, but the suit was dismissed for lack of jurisdiction.

In the present action, plaintiff alleges that as a result of bathing in the hot tub, she suffered "serious damage to her immune system" and "persistent injuries, allergies and medical expenses." (Compl. ¶ 10.) Although plaintiff alleges that she is or was infected with pseudomonas aeruginosa, no medical provider has provided such a diagnosis. Nonetheless, plaintiff maintains that bathing in the hot tub caused her to become ill, stating that:

> Since the use of the hot tub I have had an increase in issues involving my immune system which have caused me to need antibiotics and other medications on a regular basis to deal with viral and bacterial infections which have caused me numerous problems and persistent illness and related infections. On a monthly basis I have problems which involve my ability to fight infection and deal with allergies. When my parents moved to Georgia, I was unable to enter certain homes because of my inability to deal with certain chemicals which caused me to become ill and develop infections. My ability to deal with infections has been severely compromised ever since the hot tub experience alleged in my complaint.

(Plaintiff's Decl. [R. 24, Attach. 3] ¶ 5.)

I will state additional facts in the course of this decision.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). For a

2

dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id. In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

In diversity cases, a court must grant summary judgment when the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard, which is whether reasonable minds could deem the evidence adequate under the governing state substantive rule. See Knoblauch v. DEF Express Corp., 86 F.3d 684, 687 (7th Cir. 1996); Mayer v. Gary Partners & Co., Ltd., 29 F.3d 330, 334 (7th Cir. 1994).

### III. DISCUSSION

To prevail on a negligence claim under Wisconsin law, a plaintiff must prove four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. See, e.g., Paul v. Skemp, 242 Wis. 2d 507, 520 (2001).[1] Defendants move for summary judgment on the ground that the record contains insufficient evidence to enable a reasonable jury to conclude that bathing in the hot tub caused plaintiff's illness. They

---

[1]In a diversity case, I apply state substantive law, here Wisconsin's, as I believe the highest court of the state would apply it. See, e.g., State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

also ask me to disregard certain evidence submitted by plaintiff in response to the summary judgment motion. I will address the latter request first.

### A. Evidentiary Objections

Defendants argue that I may not consider any of plaintiff's proffered medical evidence for a variety of reasons. Plaintiff's evidence includes Robert Fulford's declaration and letter, Dr. Lowell G. Hamel's letter and deposition statements, and certain lay witnesses' declarations purporting to provide medical opinions.

#### 1. Robert Fulford

In his declaration, Fulford does not identify himself as a doctor or provide other qualifications but states that he "first began seeing [plaintiff] in April of 2002 at the Allergy & Health Success Center, L.L.C. in Cleveland[,] Tennessee," and that "[i]t appears that [plaintiff's] current condition and needed course of treatment was[,] in part, caused by the illness and insult to her immune system which occurred when she used the hot tub as described in her complaint." (Fulford Decl. [R. 17] ¶ 1, 2 & 6.) In a letter, Fulford repeats many of the statements he made in his declaration; however, the letter contains no opinion regarding the cause of plaintiff's illness. (See Attach. to Pl.'s Opp'n to Defs.' Supp. Mot. for Summ. J. [R. 33, Ex. 2].)

Defendants argue that pursuant to Fed. R. Civ. P. 37(c)(1), I should exclude Fulford's declaration and letter because plaintiff did not properly identify him as an expert pursuant to Fed. R. Civ. P. 26(a)(2) and Civil L.R. 26.1 (E.D. Wis.). Fed. R. Civ. P. 26(a)(2) requires a party to disclose its experts and provide expert reports at a time directed by the court. As explained below, Civil L.R. 26.1 elaborates on this requirement. Fed. R. Civ. P.

4

37(c)(1) provides in relevant part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

On October 4, 2004, I entered a scheduling order in the present action that required plaintiff to "designate its experts with contemporaneous reports, pursuant to Civil L.R. 26.1, no later than January 3, 2005." (Sched. Order [R. 11] ¶ 2.) Civil L.R. 26.1 provides as follows:

> (a) Each party must disclose to every other party the substance of all expert witness evidence that the party intends to present at trial, including expert witness evidence of hybrid fact/expert witnesses such as treating physicians.
>
> (b) Except as otherwise directed by the court, the disclosure must be in the form of a written report prepared and signed by the witness which includes a statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered in forming such opinions; any exhibits to be used as a summary of or support for such opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years; the compensation to be paid to the expert; and a listing of any other cases in which the witness has testified as an expert at trial or in deposition within the preceding four years.
>
> (c) Unless the Court designates a different time, the disclosure must be made at least 90 days before the date the case has been directed to be ready for trial, or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Paragraph (a), within 30 days after the disclosure.

When plaintiff submitted Fulford's declaration, defendants objected on the ground that plaintiff had not disclosed Fulford as an expert and had not supplied the information required by Civil L.R. 26.1(b). Plaintiff did not dispute that she failed to comply with Civil L.R. 26.1 and offered no reason for such failure. Nonetheless, I held a telephonic conference with the parties and provided plaintiff with an additional thirty days to disclose

her experts and expert reports. (See Feb. 3, 2005 Mins. of Conf. [R. 27].) However, the thirty days has long since expired and plaintiff has still not complied with Civil L.R. 26.1. Although plaintiff filed Fulford's letter and seems to hold it out as his "report," the letter contains none of the information required by Civil L.R. 26.1(b), such as his qualifications or an explanation for his conclusion.[2] Further, plaintiff has not attempted to show that her failure was substantially justified or harmless. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), I will not consider Fulford's declaration and letter.

As an alternative ground for excluding Fulford's evidence, defendants argue that Fulford is not qualified to render medical opinions. Pursuant to Fed. R. Civ. P. 56(e), evidence offered in opposition to a motion for summary judgment must be of a kind admissible at trial. See, e.g., Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994). For expert testimony to be admissible at trial, it must comply with Fed. R. Evid. 702, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[2]In a document filed after I provided plaintiff with an additional thirty days to make her expert disclosures, plaintiff states that she has not hired an expert "specifically employed to provide expert testimony" within the meaning of Fed. R. Civ. P. 26(a)(2)(B), but has received reports from "treating health care providers." (Attach. to Pl.'s Opp. to Defs.' Supp. Mot. for Summ. J. [R. 33, Ex. 1] ¶ 3.) However, pursuant to Civil L.R. 26.1(a), hybrid fact/expert witnesses such as treating physicians are subject to the same disclosure requirements as expert witnesses specifically employed to render expert opinions. Thus, to the extent plaintiff intends to argue that her noncompliance with Civil L.R. 26.1 is justified because all of her experts are hybrid fact/expert witnesses, such argument fails.

6

In the present case, plaintiff has not shown that Fulford's testimony would comply with Rule 702 because she has not demonstrated that he is "qualified as an expert by knowledge, skill, experience, training, or education" to render opinions concerning the nature and cause of plaintiff's illness. As defendants have shown, Fulford is a pharmacist, not a medical doctor. A pharmacist is "one engaged in the practice of pharmacy," and "pharmacy" is "the art or practice of preparing, preserving, compounding, and dispensing drugs, of discovering new drugs through research, and of synthesizing organic compounds of therapeutic value." Webster's Third New International Dictionary 1694 (1986). A witness having the qualifications of a pharmacist is not qualified to opine on whether exposure to a contaminated hot tub caused plaintiff to become ill.[3] Accordingly, plaintiff has failed to establish that Fulford's testimony would be admissible at trial, and for this reason also I will not consider Fulford's letter and declaration in deciding defendants' summary judgment motion.[4]

**2. Lowell G. Hamel, M.D.**

Plaintiff also submits a letter and deposition statements from Lowell G. Hamel, M.D. However, plaintiff has not complied with Civil L.R. 26.1(b) by producing an expert report prepared by Hamel; thus, I will not consider either document. Hamel's letter cannot serve

---

[3] I also note that defendants have submitted evidence indicating that the Polk County, Tennessee District Attorney has indicted Fulford for pretending to be a physician. (See Jan. 13, 2005 Pezze Aff. Ex. B [R. 21, Attach. 1].)

[4] In her briefs, plaintiff seems to argue that whether Fulford is qualified to render expert opinions is a question for the jury to resolve. However, although it is for the jury, not the court, to determine whether plaintiff's expert testimony is credible, whether plaintiff's expert is qualified to provide expert testimony in the first place is a question for the court. See, e.g., Ueland v. United States, 291 F.3d 993, 997 (7th Cir. 2002); Adams v. Ameritech Servs., Inc., 231 F.3d 414, 423 (7th Cir. 2000).

7

as his report because it does not include, among other things, Hamel's qualifications or the data on which he based his opinion. Nor has plaintiff shown that her failure to comply with Civil L.R. 26.1 was substantially justified or harmless. Thus, pursuant to Fed. R. Civ. P. 37(c)(1), I will not consider Hamel's letter or deposition excerpts.

Even if I did consider them, they would be of no value to plaintiff. Hamel's letter states that he "has no doubt that the injuries suffered by Steve Collar and his family were directly related to pseudomonas contracted in [defendants'] hot tub." (Attach. to Pl.'s Opp'n to Defs.' Supp. Mot. for Summ. J. [R. 33, Ex. 2].) However, plaintiff produces no evidence that Hamel ever examined her or reviewed her medical records. Moreover, in his deposition, Hamel expresses no opinion regarding plaintiff.

### 3. Lay Medical Testimony

Defendants also object to statements in the declaration of Steve and Pamela Collar opining that:

> [plaintiff] has suffered oversubstantial [sic] medical expenses since her use of the hot tub which appear to be directly related to the illness she suffered as a direct result of her use of the hot tub. I have been advised by her medical providers that her health issues are directly related to the assault on her immune system which occurred when she used defendants' hot tub and became ill.

(Decl. of Steve & Pamela Collar [R. 16] ¶ 5.) The above statement is admissible to show that after bathing in the hot tub plaintiff became ill and incurred substantial medical expenses, but not for the purpose of establishing that bathing in the hot tub caused her to become ill. Neither Steve nor Pamela Collar is a doctor or otherwise qualified to render medical opinions. Further, their statements as to what plaintiff's medical providers "advised" them is inadmissible hearsay.

8

**B. Causation**

To establish causation, plaintiff must show that a reasonable jury could conclude that defendants' negligence was "a substantial factor in causing the harm from which damages are claimed." Fondell v. Lucky Stores, Inc., 85 Wis. 2d 220, 227 (1978). Plaintiff bears the burden of proving causation, Rogers v. AAA Wire Prods., Inc., 182 Wis. 2d 263, 270 (Ct. App. 1994), and a finding of cause does not automatically flow from a finding of negligence, Fondell, 85 Wis. 2d at 226.

Defendants argue that in the absence of expert testimony, no reasonable jury could find that bathing in defendants' hot tub caused plaintiff's illness. Under Wisconsin law,[5] "whether expert testimony is required in a given situation must be answered on a case-by-case basis." Weiss v. United Fire & Cas. Co., 197 Wis. 2d 365, 380-81 (1995) (internal quotation marks, alternation and citation omitted). Generally, when certain kinds of evidence are difficult for jurors to evaluate without the benefit of expert testimony, the trial court may decline to permit the case to go to the jury in the absence of such testimony. Id. at 378-79. "The lack of expert testimony in cases which are so complex or technical that a jury would be speculating without the assistance of expert testimony constitutes an insufficiency of proof." Id. at 381. However, before expert testimony is required, the court must find that the matter involved is "not within the realm of the ordinary experience of mankind." Id. at 379 (internal quotation marks, alteration and citation omitted).

---

[5] As the parties do not discuss the issue, I assume without deciding that the question of whether expert testimony is required is one of substance governed by state law rather than one of procedure governed by federal law.

In the present case, whether bathing in defendants' hot tub caused plaintiff's illness is a medical question that a person with the ordinary experience of mankind cannot answer. See id. (noting that expert testimony is required in many cases involving medicine because medicine involves special knowledge, skill or experience on subjects which are not within the realm of the ordinary experience of mankind); see also Cramer v. Theda Clark Mem'l Hosp., 45 Wis. 2d 147, 150-52 (1969) (describing cases in which expert testimony is required and including cases involving medicine). In order to conclude that defendants' hot tub made plaintiff sick, a jury would need to know about plaintiff's illness and whether bathing in a hot tub contaminated with pseudomonas aeruginosa (or some other harmful substance) could have caused or contributed to it. But an ordinary jury would be incapable of obtaining such knowledge without hearing a medical witness. Without such testimony, a jury could only speculate. Cf. Rucker v. Jewel Food Store, No. 03-3467, 2004 WL 2792013, at **2 - 3 (Wis. Ct. App. Dec. 7, 2004) (holding that expert medical testimony was required to prove that ingesting contaminated food was the cause of plaintiff's medical condition).

Plaintiff does not present medical evidence but rather argues that the jury may infer that she became ill as a result of using defendants' hot tub because the tub caused some of her family members to become ill. To prevail on this argument at trial, plaintiff would have to produce evidence from which a reasonable jury could conclude that plaintiff and her family members suffered from the same illness and that plaintiff would probably have not contracted such illness at the same time her family members did unless she contracted it from the same source. However, based on the present record, no reasonable jury could draw the first conclusion. Plaintiff has produced no evidence from which a reasonable jury

10

could conclude that plaintiff suffers from the same illness as her family members. No qualified medical expert has concluded, or provided evidence from which a reasonable jury could conclude, that plaintiff and her family members suffer from a common illness. Although in her declaration Pamela Collar describes plaintiff's symptoms and those of her family members,[6] her statement is vague and confusing and insufficient to enable a reasonable jury to conclude that plaintiff and her family suffer from the same illness. It follows, therefore, that a reasonable jury could not infer from the fact that plaintiff bathed in the same hot tub that made her family members ill that the tub caused her illness as well.

Accordingly, because plaintiff has produced insufficient evidence of causation, no reasonable jury could return a verdict in her favor. Thus, I will grant defendants' motion for summary judgment.

---

[6]Specifically, Pamela Collar's declaration states:

> Since our exposure to the hot tub our medical problems have required us to seek assistance from numerous medical providers over the years in an effort to deal with constant infections. This has been true for all of us. I believe that I have recovered. But Steve, Mandy and Sheena have not. Ever since we had this insult to our immune system from the hot tub, we have experienced bouts with mononucleosis, and other infections which have caused us to be disabled for weeks at a time. For me this has subsided. But for Steve, Mandy and Sheena it has not. They have all experienced constant infections, and continual trips to doctors and health care people who might help deal [sic] with these constant problems. It has been particularly difficult for Sheena who has suffered from allergies to numerous substances. In some situations she has been disabled for weeks at a time, with fever unable to do her daily activities such as attending school, chores and jobs she has been able to obtain.

(Decl. of Pamela Collar [R. 24, Attach. 2] ¶ 3.)

## C. Sanctions

Defendants argue that pursuant to Fed. R. Civ. P. 11, I should sanction plaintiff's attorney for filing a complaint containing factual allegations unlikely to have evidentiary support, and for attempting to mislead the court into believing that Fulford is a medical doctor instead of a pharmacist. However, a party seeking sanctions must make a motion separate from other motions or requests, see Fed. R. Civ. P. 11(c)(1)(A); Johnson v. Waddell & Reed, Inc., 74 F.3d 147, 151 (7th Cir. 1996), and a district court abuses its discretion when it permits a motion for sanctions to be made in conjunction with another motion, Divane v. Krull Elec. Co., Inc., 200 F.3d 1020, 1025 (7th Cir. 1999). In the present case, defendants have not filed a separate motion for sanctions, but instead make scattered requests for sanctions throughout their briefs in support of their motion for summary judgment. Such requests do not meet the separate motion requirement. Johnson, 74 F.3d at 151. Further, because defendants have scattered their requests, it is difficult to evaluate them and to locate plaintiff's responses. Thus, I will deny defendants' requests for sanctions.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' request for sanctions pursuant to Fed. R. Civ. P. 11 is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27 day of May, 2005.

/s_____
LYNN ADELMAN
District Judge